# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EWA SALATA, | ) |
|       Plaintiff, | ) |
|       v. | ) No. 15-cv-248 |
| COCA-COLA REFRESHMENTS USA, INC. | ) |
|       Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendant Coca-Cola Refreshments USA, Inc. ("Coca-Cola") has filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) on Plaintiff's single-count complaint sounding in premises liability. (R.46). For the following reasons, the Court grants Coca-Cola's motion, dismissing the complaint with prejudice.

## BACKGROUND

This case concerns a slip-and-fall injury Plaintiff Ewa Salata ("Salata") suffered while cleaning on premises owned by Coca-Cola. Specifically, Salata alleges that, as a result of Coca-Cola's breach of its duty to maintain and inspect the property, and/or to warn her about defective conditions on the property, she slipped and fell on a loose or broken tile located in the women's locker room of a Coca-Cola distribution facility in Chicago, Illinois. (R.1-1, Compl. ¶ 10). Coca-Cola denied all material allegations of negligence (R.6), and now seeks summary judgment on the grounds that Salata has failed to produce evidence that Coca-Cola had actual or

constructive notice of the allegedly defective tile. (R.48, Opening Br. at 2). The Court looks to the following facts in its disposition of this motion.

## I. The Premises

Coca-Cola operates a Chicago distribution facility (the "Premises"), which consists of a warehouse and an office area containing restrooms and employee lockers. (R.49, Defendant Rule 56.1(a)(3) Stmt. Facts ¶¶ 13-14). Two locker rooms—one for men and one for women—are located on the second floor of the office area. (R.54, Salata Rule 56.1(b)(3)(B) Stmt. Facts ¶ 15). Coca-Cola's warehouse manager—Tiffany Farrier ("Farrier")—had only been in the women's locker room once, when she did a walk-through as part of her employee orientation in September 2012. (R.54, Salata Rule 56.1(b)(3)(C) Stmt. Additional Facts ¶¶ 1-3). Farrier testified that there was only one other female Coca-Cola employee working at the Premises at that time, and she used the restrooms and lockers located on the first floor of the office area -- not the second floor. (R.49-1, Farrier Dep. Tr. at 38, 43).

## II. BSM Cleaning Services and Practices

In late 2011, BSM Corporation ("BSM") began performing cleaning services at the Premises under a franchise agreement with non-party Coverall Corporation. (R.49, Defendant Rule 56.1(a)(3) Stmt. Facts ¶¶ 24-25). Plaintiff's daughter, Monika Salata ("Monika"), owned and operated BSM. (*Id.* ¶ 22). BSM performed cleaning services at the Premises five to six days a week. (R.49-2, Monika Dep. Tr. at 49-50). During its regular cleaning of the Premises, BSM would collect garbage, dust, mop, and vacuum. (R.49, Defendant Rule 56.1(a)(3) Stmt. Facts ¶ 28). In order to determine whether the women's locker room needed cleaning, the BSM crew would enter the locker room each day it was on-site. (*Id.* ¶ 30). Monika testified that she would "walk in to see . . . if it ha[d] been used or not . . . You walk in and see if the garbage can is

empty or not, or if there [are] any papers around the garbage can." (R.49-2, Monika Dep. Tr. at 60; *see also id.* at 70). BSM would also perform a "deep cleaning" on the Premises once per month, even in areas with little use. (R.49, Defendant Rule 56.1(a)(3) Stmt. Facts ¶ 31). As Monika testified, "I don't even think the women's [locker room] was used. But anyway, once a month, even if it was not used, once a month we had to go in and clean." (R.49-2, Monika Dep. Tr. at 58).

Monika agreed that it was her practice to "keep [her] eyes open for things that may be a problem" while performing cleaning services. (*Id*. at 59). Plaintiff Salata likewise testified that, upon entering a room to perform cleaning services, she would "take a glance around checking if everything looks okay." (R.49-4, Salata Dep. Tr. at 13). If she noticed anything unusual about the floor tiles, for example, she would not enter the area "and would report [the issue] to the security officer." (*Id.*). Monika testified similarly. (R.49-2, Monika Dep. Tr. at 71 ("[Q]. If you had seen a problem with the tile on the floor being loose or displaced, would you tell that to somebody? [A]. Yes I would report it . . . . [Q]. Because you would consider that to be a possible safety problem; is that right? [A]. Yes")).

### III. The Incident

#### A. December 8, 2012

At the time of the incident on December 8, 2012, Monika was BSM's only employee, and she enlisted the help of her family, including Salata, to perform cleaning services for BSM clients. (R.49, Defendant Rule 56.1(a)(3) Stmt. Facts ¶¶ 23, 34). Salata had worked for BSM at the Premises at least 20 times prior to her accident, but she had never before cleaned the women's locker room on the second floor of the office area. (R.54, Salata Rule 56.1(b)(3)(B) Stmt. Facts ¶ 35).

3

On December 8, as part of the monthly deep cleaning, Salata entered the women's locker room and proceeded to clean and dust the tops of the lockers. (R.49-3, Salata Dep. Tr. at 81-84). Because the locker tops were "barely used," she started "moving and cleaning walls and cobwebs there." (*Id.* at 82). She was "looking up, removing whatever was to be removed from the [walls] . . . And then suddenly I fell down and I couldn't get up." (*Id.* at 83-84). More specifically, Salata testified that she was "stepping along the wall sideways and then I turned towards another wall . . . So when I stepped on this tile . . . it sort of like slipped from underneath my feet and I went on my back." (*Id.* at 89-91). The tile in question was "a regular tile and totally identical [to] all the other tiles around." (*Id.* at 89). Salata agreed that there "was nothing in the room at all that would have caused [her] to think that there was something wrong with this tile where [she] fell." (R.49-4, Salata Dep. Tr. at 9). As or after she fell, the tile moved from its original position, revealing black material underneath. (*Id.*). Salata testified that she did not feel any other loose floor tiles. (*Id.* at 12). She estimated that she was in the women's locker room for approximately one half-hour before her fall. (R.49-3, Salata Dep. Tr. at 85).

Immediately after the accident, Monika went to the area where Salata fell and found a space on the floor missing a tile. (R.49, Defendant Rule 56.1(a)(3) Stmt. Facts ¶ 61). A few days later, another BSM crewmember took photographs of the loose tile piece on which Salata allegedly slipped. (*Id.* ¶ 63; *see also* 49-5, Photographs).

### B. Conditions on the Premises

Monika testified that she had never seen any loose or displaced tiles on the Premises prior to her mother's slip-and-fall incident, but she did not pay specific attention to floor tiles. (R.49-2, Monika Dep. Tr. at 69-71). Monika further testified that she had never experienced any problem with the floor of the women's locker room during her prior deep cleanings of that room,

including in the corner where her mother fell, and that she was not made aware of any such problem until the incident. (*Id.* at 71-72, 87-88). Salata also testified that no one informed her that something was wrong with the tile. (R.49-4, Salata Dep. Tr. at 10). Salata does not dispute that "neither [she] nor any BSM employee [was] aware of any issues with the floors of the premises prior to [her] accident." (R.54, Salata Rule 56.1(b)(3)(B) Stmt. Facts ¶ 43; *see also id.* ¶¶ 45-46).

Farrier testified that she had never observed a loose or displaced floor tile in the women's locker room, although she only had entered that room "probably . . . once." (R.49-1, Farrier Dep. Tr. at 14, 25, 32). She had no knowledge of there ever being a loose floor tile in the women's locker room, or on the Premises generally, and was unaware of any complaints about tile conditions prior to Salata's accident. (*Id.* at 25, 28, 35). She was not aware of any individual falling in the women's locker room, for any reason, aside from Salata. (*Id.* at 35). Farrier did not know when the floor tiles were installed in the women's locker room. (*Id.* at 27-28).

Farrier acknowledged that "people [at Coca-Cola] didn't go around at intervals or anything like that to look for problems," such as loose tiles in the women's locker room, although a district manager "went around and checked" the Premises to ensure that BSM had cleaned to Coca-Cola's satisfaction. (*Id.* at 32, 18-19). To Farrier's knowledge, no one at Coca-Cola had "the responsibility for going around trying to find out if everything was in a proper condition," even though Coca-Cola had hired independent contractors to clean the Premises and, so far as Farrier knew, only BSM crewmembers entered the women's locker room on a regular basis. (*Id.* at 27, 39-40). Farrier testified that Coca-Cola's maintenance technician—Jesse Moreno ("Moreno")—would have been responsible for repairing or replacing loose floor tiles, but it "wasn't a part of his normal job tasks" to conduct "periodic inspections to determine

5

whether the floor was in a safe condition." (*Id.* at 26-27). Moreno's job was to fix problems that had already been identified, and mostly in the warehouse. (*Id.*). Farrier was unaware of any "policies or procedures that Coca-Cola used for checking the conditions specifically of the floors to make sure that they [were] not in a defective condition." (*Id.* at 28).

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

## ANALYSIS

Coca-Cola seeks summary judgment on the grounds that Salata has failed to produce evidence that Coca-Cola had actual or constructive notice of the allegedly defective tile. (R.48, Opening Br. at 2). Salata does not dispute that Coca-Cola lacked actual notice of the defective condition. (*See generally* R.53, Response Br.). Instead, Salata argues that the evidence raises a genuine issue as to (i) Coca-Cola's constructive notice under a general negligence theory, and/or

6

(ii) Coca-Cola's liability under a *res ipsa loquitur* theory. (*Id.*). The Court addresses each argument, in turn.[1]

I.  **Constructive Knowledge – General Negligence Theory**

Illinois courts look to the Restatement (Second) of Torts § 343 to set forth the "settled law regarding the liability of possessors of land to invitees." *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 468, 343 N.E.2d 465, 472 (1976). The Restatement (Second) of Torts provides that a "possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger." *Id.* § 343.

Accordingly, Salata must establish that Coca-Cola "had actual or constructive knowledge of the existence of the dangerous condition that caused the injury" in order to demonstrate a breach of Coca-Cola's duty as possessor of land. *Smolek v. K.W. Landscaping*, 266 Ill. App. 3d 226, 228, 639 N.E.2d 974, 977 (2d Dist. 1994). Premises liability plaintiffs generally prove constructive knowledge by establishing "that the dangerous condition existed for a sufficient time or was so conspicuous that the defendant should have discovered the condition through the exercise of reasonable care" or that the "defendant ha[d] notice of facts which would cause a reasonable person to inquire further[.]" *Id.* at 266 Ill. App. 3d at 228-29. Each of these tests favors Coca-Cola in this case.

---

[1] The parties agree that Illinois law governs this negligence action. (R.48, Opening Br. at 4; R.53, Response Br. at 5). Coca-Cola further "acknowledges that its duty to Plaintiff was one of reasonable care under the circumstances, regardless of Plaintiff's status as licensee or invitee." (R.48, Opening Br. at 5 n.2) (citing Illinois Premises Liability Act, 740 ILCS § 130/2).

### A. Sufficiency of Time

Salata first argues, "As to the length of time that the defect existed, a jury can determine that it was the type of condition that must have existed long enough that defendant should have discovered it, had defendant complied with its duty to maintain and inspect its premises." (R.53, Response Br. at 10). Salata offers no direct evidence on this issue. Further, even viewing the evidence in the light most favorable to Salata, the Court cannot infer any such timing from the record. This is especially true where, as discussed *infra*, the uncontested evidence reflects that the loose tile was not a conspicuous condition. *See Smolek*, 266 Ill. App. 3d at 230 (noting that "even where the condition has existed for a considerable time, constructive notice cannot exist where the dangerous condition is so well concealed that it is unlikely to be discovered through the exercise of reasonable care"). Here, Salata cannot rely on a jury's speculation as to the length of time in order to preclude summary judgment in favor of Coca-Cola. *See Lebron v. Pizza Hut of Am., Inc.*, No. 03 C 1806, 2004 WL 2423826, at *3 (N.D. Ill. Oct. 26, 2004) ("Rather than finding roots in concrete facts, plaintiff's attempt to create a factual dispute is based on conjecture and speculation . . . [this] will not alone preclude a summary judgment motion").

### B. Conspicuousness of the Defective Tile

Additionally, nothing in the record suggests that Coca-Cola should have discovered the loose tile in the women's locker room through the exercise of reasonable care. It is uncontested that only BSM crewmembers entered the women's locker room on a semi-routine basis; Coca-Cola employees did not. The sole Coca-Cola witness testified that she was not aware of any complaints about tile conditions in the women's locker room. Neither Plaintiff Salata nor her daughter Monika—who had previously cleaned the women's locker room, including the corner

at issue—reported any unusual condition in the women's locker room prior to the incident on December 8, 2012. Most significantly, Salata testified that, immediately prior to the fall, there "was nothing in the room at all that would have caused [her] to think that there was something wrong with this tile where [she] fell." (R.49-4, Salata Dep. Tr. at 9). In fact, Salata did not feel any other loose tile during her cleaning of the women's locker room that day, and the lone defective tile was "a regular tile and totally identical [to] all the other tiles around." (*Id.* at 12; *see also* R.29-3, Salata Dep. Tr. at 89).

In opposing summary judgment, Plaintiff ignores this latter testimony. Instead, she argues that the "defect in the present case was not concealed . . . A genuine issue of material fact exists whether the defect was discoverable upon a reasonable inspection of the premises." (R.53, Response Br. at 12). The "reasonable inspection" Salata demands, however, would require Coca-Cola to physically inspect every tile on its Premises whenever it invites independent contractors, including BSM, to perform services thereon. In particular, Salata faults Coca-Cola for failing to institute a policy whereby it (*i*) physically inspects all floor tiles on a regular basis—even in rooms used rarely by employees, and used once per month by contractors—and (*ii*) appoints an employee to perform such inspection. (*Id.* at 10-13). This demand ignores, however, that Illinois law does not subject a defendant to liability "for every defect on its premises, regardless of the circumstances." *Lebron*, 2004 WL 2423826 at * 2 (citing Illinois Premises Liability Act, 740 ILCS 130/1-5). Rather, to impose liability, Salata must prove that the defective tile was "so conspicuous" that Coca-Cola should have discovered it through the exercise of "reasonable care." *Smolek*, 266 Ill. App. 3d at 228. Here, Salata has failed to present evidence on the conspicuous nature of the loose tile. To the contrary, the record—including Salata's own testimony—reflects that the loose tile appeared to be "totally identical" to the

9

surrounding stable tiles. (R.29-3, Salata Dep. Tr. at 89). As Coca-Cola observes, the "testimony of Plaintiff and her daughter makes clear that there was nothing about any of the locker room tiles that would have put Coca-Cola on notice of the defective tile prior to Plaintiff's fall." (R.55, Reply Br. at 9).

The Court finds *Smolek* instructive here. In *Smolek*, the plaintiff-homeowner sought damages for injuries she sustained after stepping into a concealed hole on the homeowners' association's property. In affirming directed verdict in favor of the defendants, the appellate court reasoned that the plaintiff "walked in this area several times each day and therefore was in an equally good position to discover the hole" as the homeowners' association. 266 Ill. App. 3d at 231. Here, as in *Smolek*, Salata offers no evidence that Coca-Cola was "in a better position to discover the condition or [was] aware of some fact that put [it] on notice of the potential existence of the condition." *Id.* Rather, Salata and Monika were in an equally good position as Coca-Cola to discover the loose tile in the women's locker room. That Salata and Monika failed to discover this tile—after working in this room at least once per month in the months leading up to the accident—supports that Coca-Cola would not have discovered it through the exercise of reasonable care. *See id.* After reviewing all testimony in the light most favorable to Plaintiff, the Court finds that there is no evidence from which a factfinder could reasonably infer the conspicuous nature of the defective floor tile.

### C. Facts Triggering a Duty of Further Inquiry

Further, nothing in the record suggests that Coca-Cola was aware of facts that would have caused a reasonably prudent person to inquire further about tile conditions in the women's locker room. As Coca-Cola recognizes, "there is no evidence of any facts, such as other loose or missing tiles elsewhere on the Premises . . . which would have warranted further inquiry." (R.48,

Opening Br. at 9). To the contrary, Salata, Monika, and Farrier each testified that she had never experienced any problem, or received any complaint, regarding flooring in any other tiled area of the Premises. Salata fails to identify any evidence on this issue. Here, too, even viewing the evidence in the light most favorable to Salata, there is no evidence from which a factfinder could reasonably conclude that Coca-Cola was aware of facts triggering its duty to inspect the women's locker room.

Even construed in the light most favorable to Salata, no evidence supports constructive knowledge on the part of Coca-Cola concerning the defective tile in the women's locker room. The Court therefore finds in favor of Coca-Cola on Salata's general negligence theory.

## II. *Res Ipsa Loquitur*

Salata further argues that the evidence in this case is sufficient to infer negligence on the part of Coca-Cola under the doctrine of *res ipsa loquitur*. A plaintiff seeking to rely on this doctrine "must plead and prove that he or she was injured (1) in an occurrence that ordinarily does not happen in the absence of negligence, (2) by an agency or instrumentality within the defendant's exclusive control." *Heastie v. Roberts*, 226 Ill. 2d 515, 531-32, 877 N.E.2d 1064, 1076 (2007). "The doctrine of *res ipsa loquitur* is not a separate legal theory but rather is a type of circumstantial evidence which permits the trier of fact to infer negligence when the precise cause of the injury is not known by the plaintiff." *Wilson v. Michel*, 224 Ill. App. 3d 380, 386, 586 N.E.2d 333, 337 (1st Dist. 1991). The doctrine's application "in a given case is a question of law which must be decided in the first instance by the trial court." *Imig v. Beck*, 115 Ill. 2d 18, 27, 503 N.E.2d 324, 329 (1986).

To support her *res ipsa loquitur* theory, Salata argues, "[f]irst, the condition at issue, a tile that was not properly affixed to the floor . . . does not happen in the absence of negligence.

11

Second, it is undisputed that the women's locker room was under the exclusive control and management of defendant." (R.53, Response Br. at 8).

### A. The Loose Tile Arising From Coca-Cola's Negligence

As an initial matter, the Court notes that the *res ipsa loquitur* doctrine does not apply, as a matter of law, unless "a duty of care is owed to the plaintiff." *Wilson*, 224 Ill. App. 3d 380 at 386. As previously stated, Illinois law does not require Coca-Cola to conduct routine tile inspections in order to discover inconspicuous flooring defects in unfrequented rooms. This lack of legal duty bars Salata's recovery under a *res ipsa loquitur* theory.

Even if the Court concluded that Coca-Cola had the duty to conduct inspections, moreover, the *res ipsa* inference is still unavailable where—as the record reflects here—a reasonable inspection may not have revealed the loose tile. *See Kemp ex rel. Estate of Kemp v. W. Oilfields Supply Co.*, No. 04 C 0160, 2005 WL 1041323, at *4 (N.D. Ill. Mar. 24, 2005) ("The *res ipsa* inference . . . cannot be based solely on a negligent inspection").

Salata's *res ipsa loquitur* theory also fails because the record permits other reasonable explanations for the tile loosening, aside from "defendant's want of care." (R.53, Response Br. at 5). Coca-Cola points to other potential scenarios: (1) BSM crewmembers—the only individuals who used the women's locker room on a semi-routine basis—"did something to the tile . . . to loosen the tile sufficiently for the hazard to present itself;" (2) the tile *was* properly affixed, but the force of Plaintiff's slip and fall "caused the tile to loosen and detach from the floor;" and (3) the tile simply loosened over time, finally giving way on December 8, 2012. (R.55, Reply Br. at 4-5). The evidence thus supports "plausible explanations for the [defective condition] other than negligence by the defendant[,]" precluding the application of *res ipsa loquitur*. *Heastie*, 226 Ill. 2d at 534; *see also Kruger v. Newkirk*, 40 Ill. App. 3d 581, 584, 352

N.E.2d 436, 439 (5th Dist. 1976) ("the accident must be one which itself suggests negligence and not be of the type that is as readily accountable for on the hypothesis of pure accident without fault"); *Britton v. Univ. of Chicago Hosps.*, 382 Ill. App. 3d 1009, 1012, 889 N.E.2d 706, 709 (5th Dist. 2008) ("the *res ipsa loquitur* doctrine applies only when the facts proved by the plaintiff admit of the single inference that the accident would not have happened unless the defendant had been negligent").

The existence of plausible, alternative explanations distinguishes this case from Salata's cited authorities. *See, e.g. Heastie*, 226 Ill. 2d 515 (permitting *res ipsa loquitur* claim against hospital where restrained patient was left alone in a hospital room and set afire by an ignition source); *Roberts v. City of Sterling*, 22 Ill. App. 2d 337, 161 N.E.2d 138 (2nd Dist. 1959) (permitting *res ipsa loquitur* claim where well-travelled public sidewalk controlled by defendant-city suddenly collapsed below pedestrian, and the city offered no explanation "tending to show that the injury was not due to its want of care"); *Bolger v. City of Chicago*, 198 Ill. App. 123, 1916 WL 1857 (1st Dist. 1916) (permitting *res ipsa loquitur* claim where a pedestrian sustained injuries in a manhole explosion resulting from a buildup of gases in chamber below city streets, and the city "expressly declined to offer any explanatory proof"). Here, the record supports reasonable, alternative explanations for the tile loosening. This evidence precludes the application of the *res ipsa loquitur* doctrine.

### B. Exclusive Control

Salata's cited authorities are also distinguishable on the basis of exclusive control. As Coca-Cola recognizes, in *Heastie, Roberts, and Bolger*, "the instrumentality which caused the accident . . . was under the control of the defendant and not acted upon . . . by the plaintiff." (R.55, Reply Br. at 7). Here, by contrast, the record reflects some agency by Plaintiff on the

instrumentality. More specifically, for months leading up to the incident, BSM crewmembers acted within the women's locker room—almost to the exclusion of Coca-Cola—and, at the time of Plaintiff's injury, she alone acted upon the tile in question. The record, thus, does not permit a finding that the tile was within the "exclusive control" of Coca-Cola for purposes of raising a *res ipsa* inference. *See, e.g.*, *Britton*, 382 Ill. App. 3d at 1012 (finding *res ipsa loquitur* inapplicable, in part, because "the operation of a revolving door is not within the exclusive control of the owner of the premises. Persons using them take a distinct part in their operation and are chargeable with the exercise of ordinary care in the use thereof"). Even viewing the "exclusive control" standard as a "flexible one in which the key question is whether the probable cause of the plaintiff's injury was one which the defendant was under a duty to the plaintiff to anticipate or guard against," *Heastie*, 226 Ill. 2d at 532, the record does not compel such a "probable cause" conclusion, for the reasons explained throughout this opinion.

The Court finds the *res ipsa loquitur* doctrine inapplicable to this case as a matter of law. Accordingly, the Court finds in favor of Coca-Cola on its motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court grants Coca-Cola's motion for summary judgment. (R.46).

**Dated:** April 25, 2016            ENTERED

_____
AMY J. ST. EVE
United States District Court Judge

14